By the Court, Cowen, J.
The plaintiffs below, having no interest in or control over the ship or steam-boats, took an insurance on their goods, against thieves, barratry of the 'master and mariners, and other perils. The goods were stolen in their progress, either from the ship or boats, while they were covered by the policy; and it did not appear whether they were stolen by one connected with the vessel as master, mariner, passenger, &c., or by a stranger. The court below thought that not material under the specific words in the-policy, and directed a verdict for the plaintiffs accordingly
It must be conceded, I think, to be a matter of great doubt, whether, under the form of the old policies which came over from the continent to England in the course of the sixteenth century, either simple larceny committed on shipboard, or the barratry of master or mariners, was reckoned among the risks insured against. Roccus, who wrote in 1655, answers clearly in the negative as to larceny; but leaves the question of barratry in doubt. (Notes, 42, 3, 4. Vid. also note 89.) It is quite obvious, however, from the notes cited, that he based himself on the general nature of insurance, as. an. indemnity against accidents merely, (and *27 the clauses in the then prevalent policy, conforming to its nature ; thus covering risks strictly fortuitous in their character. Accordingly, in note 41, he holds piracy and robbery to be within the risk, because fortuitous or accidental; but in note 42, a theft on board the vessel, is distinguished, because, among other reasons, it is considered as proceeding from negligent custody, and not from accident. In note 44, barratry of the master is set down as doubtful, on the same ground, namely, because it is not fortuitous. More modern writers speak of the same principle, when considering the general nature of insurance. Millar says that, from the ñatee of the contract of insurance in general, it seems to-follow, that the insurer means to subject himself to the consequence of all perilous accident, or unforeseen misfortune, which may happen to the subject in the course of the adventure; but it is for accident he is liable, and for accident only. (Millar's Elem. of the Law of Ins. 130.) This learned writer afterwards proceeds at p. 138, to consider the question, whether barratry enters into the nature of insurance or not. He examines it relatively to the ship owner, and shipper, on principle, authority and practice; but finally admits the doubt to be superseded by the almost universal practice of modern nations to insert an express clause covering this risk. The arguments which he submits in the course of the discussion have a direct reference also to the question, whether theft on ship-board should be covered by the nature of insurance; and lead the mind to inquire, whether the word thieves, in the British policies, was not introduced with a view to remove a doubt on that head.
If the larceny in the case at bar had been clearly imputable to either the master or mariners belonging to the ship or boats, no question could have arisen; for it has long been entirely settled that such embezzlement comes pre-eminently within the notion of barratry. (Weskett, tit. Barratry, and the books there cited. Cunningh. on Ins. 159. Condy's Marsh. 515, a. Hughes on Ins. 176, note (d,) Am. ed. of 1833. 1 Phil, on Ins. 613, 615, 616.) *28 The proof leaving it ambiguous, however, whether the goods were not stolen by a passenger or stranger, the chief justice told the jury, that a larceny by any one would be equally within the terms of the policy. This raises the question, whether the insurance against thieves extends to a theft on ship-board by persons other than the master or mariners.
The enumeration of risks in this policy is the same with that in the present English policy at Lloyd’s, (M’Cullock's Commercial Dictionary, Insurance, p. 703;) and the addition of the word thieves, to those of pirates and rovers, seems for a long time to have been a peculiarity in the English form-. In the prominent instances given by Weskett’s. collection of forms, in 1783, viz. the policies of Cadiz, Copenhagen, Hamburgh, Leghorn, Rouen and Stockholm, the word does not occur; though the same writer includes it in the then English form, in which it stands, as in the case before us, superadded to the words pirates and rovers, in immediate contiguity. (Vide Wesk. tit. Policy, Cadiz, Spc.) Most of these policies include barratry; that of Leghorn, robbery; while others content themselves with such general words as, upon the ancient rules of construction, would extend to forcible depredations-.
The term thieves-, is broad enough in. law to cover both compound and simple larceny, and, in common parlance, to include the latter. I do not see, therefore, how, upon the ordinary principles of construction-, it can be doubted that the word was intended to reach at least simple larceny committed by any one. A difficultyhas, however, arisen on what has been considered a species of póMtive authority against such a construction. Malyne, Who wrote in the early part of the seventeenth century, (in ch. 25, of his Lex -Merc.) says: “If there be thieves on ship-board, within themselves, the master of the ship is to answer for that, and to make it good, so that the assurers are not to be charged with any such loss; which sometimes is not observed.” (Vide Mai. 3d ed. published 1656, p. 109.) The remark has been implicitly repeated by many writers since, *29 down to the commentaries of the learned Chancellor Kent. Malyne mentions no authority, either of any book or adjudged case; and there can be very little doubt that he was speaking from the ancient writers, and applying them to the English policy, without adverting to the fact that the old policies omitted, and the English policy included, the word thieves. Several of the latter writers seem to have spoken with the same inadvertency, as it is natural they should, on the authority of so respectable a writer as Malyne has always been taken for. Roccus, however, admonishes us that we are to attend particularly to the words of the policy, in order to see whether it covers thefts. In note 43, he says, where a theft is committed by nocturnal robbers in port, it seems the insurers are not liable; but this is on account of the insurance being against shipwreck, enemies and pirates, only. If it be in general terms “ that the goods shall be conveyed safely to a particular place,B then the insurer is bound even for a theft committed by robbers, hr port; and far nil possible risks during the voyage. A common carrier is called in our law an insurer, on account of his implied undertaking being general, like Roccus’ instance of a policy; for the very reason that he is responsible for losses by robbery, and simple larceny. Burn, notwithstanding the remark of Malyne, after reciting the English enumeration of risks, says, it is not clearly ascertained that if there be thieves on shipboard, this is such a case as comes within the terms of the policy; though it was held in Hartford v. Maynard, before Lord Mansfield, in 1785, that the insured is liable for a robbery committed by thieves from without. (Burn on Ins. 12.) Park also cites both Malyne, and Roccus, note 42, in favor of Malyne’s remark ; but adds : “ his (Roccus’) reasoning on this subject is by no means conclusive as to English insurances, on account of the express terms of the contract. (1 Park on Ins. 30, 31, Lond. ed. 1809.) With deference, it seems to me that this mere denial of conclusiveness comes much short of presenting Roccus’ argument in its true force. Connecting his notes, 42 and 43, *30 they furnish clear reason for the English policy covering a theft from within as well as without; viz. theft is not covered, because-^!. The owner is bound to take care of the goods, and the loss is imputable to his own negligencé, not accident; 2. Because the master is liable; 3. Because the insurer is not liable for barratry; but 4. The insurer may be liable for theft on express words. Roccus was a judge of the Magna Curia, at Naples, and was, no doubt, speaking of a policy which made no express mention either of barratry or theft. Mr. Millar says, after citing note 42, that among all the older commentators, it was matter of disquisition, whether damage by theft was to be reckoned one, of those accidents which are provided against by the policy. (Millar, 145, 146, note.) He accordingly puts it, on summing up from the writers, old and new, and upon principle, that unless there be an express clause to that effect, the insurer is liable neither for the fault nor fraud of the ship owner, master or crew. Throughout his whole train of reasoning, he bases himself on the general nature of insurance, conceding that the liability of the underwriter may be enlarged in all cases where no inflexible principle of morals would be violated. Accordingly, points left doubtful by the old writers have been, from time to túne, cleared, up, by the introduction of new words into the policy. Losses by barratry of master and mariners, were, in this way, made the subject of insurance in most countries, though in some, the words are forbidden by ordinance, as contra bonos mores. (Millar, 149, 150. ) Lord Mansfield censured the practice of the owner thus insuring, though I do not perceive that the like censure has ever been extended to the shipper of goods; and the universal practice of Holland distinguishes in favor of such an insurance by the latter, while the former is tied up to an insurance against the barratry of the crew only. (Vide Millar, 149, 151. ) Some policies on goods mention not only the barratry, but negligence, both of master and crew. Such is the form at Copenhagen. (Millar, 151, 152. 2 Magens, 323, 324. Weskett, 144.) The same policy by the owner is made *31 expressly to cover the negligence of both; but the barratry of the crew only. (Id.)
Without multiplying examples, the remarks of Molloy, (B. 2, ch. 7, § 7,) are true) viz. “The policies now-a-days are so large that almost all those curious questions that former ages, and the civilians, according to the law marine, nay, and the common lawyers too, have controverted, are now out of debate; scarce any misfortune that can happen, or provision to be made, but the same is taken care for in the policies that are now used; for they insure against heaven and earth, stress of weather, storms, enemies, pirates, rovers, &c. or whatsoever detriment shall happen or come to the thing insured, &c. is provided for.” Is not the mind irresistibly led to believe that the word thieves, in the English policy, was introduced as a modification, and intended to obviate one among those “ curious questions” which we have seen existing in respect to the general nature of insurance, as it stood on the old policies ? Phillipps, in his second edition, (Is# vol, 649,) puts it cautiously, that the words thieves and rovers, have not, in general, been understood to cover losses by theft, unless accompanied by violence, citing Park, Emerigon, Roccus and Kent. To these may be added, Weskett and Marshall; but under what qualification all these learned writers should be read, we have already in part seen. Some of them clearly could not be speaking in respect to the modern English policy; others did not advert to its peculiar words; while Mr. Park, as already shown, suggests the natural qualification. That the English policy is not confined to assailing thieves, but covers at least a simple larceny committed by a stranger to the ship, has also lately been held by the present learned chancellor of this state, whose reasoning on the question tends clearly to show that he would, if necessary,- have extended the policy to theft committed by a passenger. (The Atlantic Ins. Co. v. Storrow, 5 Paige, 285, 292, 293.) This case also adjudges the doctrine as laid down in Roccus, (note 27,) and Millar, (p. 141,) viz. that the insurer is considered so far a principal, *32 as against the owner and master, that, on paying the loss, he becomes subrogated to the rights of the assured. He may, therefore, recover in equity for the loss he has paid; or, if the insured himself proceed primarily against the owner or master, thus obtaining his indemnity, or if he cancel or otherwise discharge the bill of lading, the act enures to the benefit of the insurer. This takes away the objection that the insurance would countenance want of due care in the carrier.
Mr. Hughes,' after noticing the remark of Emerigon, which is the same in substance with that already quoted from Malyne, observes, that the association of the word thieves, with pirates and robbers, seems to show that external thieves were intended by the framers of the English policy. He immediately adds, however, what I cannot but consider as much more obvious, that, “as the term thieves is certainly capable of a more extended interpretation than the two words which precede it, and is in itself applicable to persons on board the ship, by whom depredations may be committed, cases may occur where thefts, committed by persons who may be on board the ship, as passengers, or even by mariners, may be included in the policy, provided they occurred without the fault of the insured.” He remarks, in a note, that “ when thefts are committed by mariners, the underwriters are liable as for barratry.” (Hughes on Ins. 176, Am. ed. of 1833.) These observations cover the whole question before us. The court below were doubtless governed by them; and, after the best consideration we have been enabled to bestow upon the question, which was well argued by counsel, we think the court were correct.
Judgment affirmed.